## IN THE CIRCUIT COURT OF THE 28th JUDICIAL DISTRICT
## CROCKETT COUNTY, TENNESSEE AT ALAMO

**MOZELLA SMITH,**
    **Plaintiff,**



COPY
*for defendant*

vs.     No. **3247**     **JURY DEMANDED**

**STATE FARM FIRE AND**
**CASUALTY COMPANY a/k/a**
**STATE FARM VP MANAGEMENT CORP.,**
    **Defendant.**

To the above named Defendant(s):

> **TO:**    **State Farm and Casualty Company**
>     **a/k/a State Farm VP Management Corp.**
>     **c/o  Registered Agent, Corporation Service Company**
>     **2908 Poston Avenue**
>     **Nashville, TN  37203**

To the above named Defendant(s):

You are hereby summoned and required to defend a civil action by filing your answer with the Circuit Court Clerk and serving a copy of your answer to the Complaint on Harold E. Dorsey, Plaintiff's attorney, whose address is 10 South Johnson Street, Alamo, Tennessee, within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

ISSUED ___**7.21**_____, 2011:

                               *Kim Kail*
                               Circuit Court Clerk

                               *Sandra Phillips*
                               Deputy Circuit Court Clerk

RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served State Farm and Casualty Company a/k/a Start Farm VP Management Corp., through the Registered Agent, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203, by the Davidson County Sheriff's Department:

**FILED**
CIRCUIT COURT OF CROCKETT CO.
Date: **7.21-11**
Time: _____ a.m./p.m.
Kim Kail, Circuit Court Clerk
*S phillips*

                              _____
                              Circuit Court Clerk

                              _____
                              Deputy Circuit Court Clerk

NO. _____

IN THE CIRCUIT COURT OF THE 28th JUDICIAL
DISTRICT FOR CROCKETT COUNTY,
TENNESSEE, AT ALAMO

SUMMONS IN CIVIL ACTION

Mozella Smith,
   PLAINTIFF,

vs.

State Farm Fire and Casualty Company
a/k/a State Farm VP Management Corp.,
   DEFENDANT.

TO:   State Farm Fire and Casualty Company
      a/k/a State Farm VP Management Corp.,
      c/o Registered Agent, Corporation Service Co.
      2908 Poston Avenue
      Nashville, TN
      Nashville, TN  37203

Come to hand _____

_____
   (Sheriff)          (Deputy Sheriff)

Solicitor for Plaintiff



## IN THE CIRCUIT COURT OF THE 28th JUDICIAL DISTRICT
## CROCKETT COUNTY, TENNESSEE AT ALAMO

MOZELLA SMITH,
     **Plaintiff,**

vs.

                        No. 3247
                        **JURY DEMANDED**

STATE FARM FIRE AND
CASUALTY COMPANY a/k/a
STATE FARM VP MANAGEMENT CORP.,
     **Defendant.**

---

## COMPLAINT

---

     Comes now the Plaintiff, Mozella Smith, by and through her attorney of record, Harold E. Dorsey, who would file this action against the Defendant, State Farm Fire and Casualty Company, and would state and show unto this Honorable Court as follows:

     1.     The Plaintiff, Mozella Smith, is a resident of Madison County, residing at 33 Carver Avenue, Apt A8, Jackson, Tennessee.

     2.     The Defendant, State Farm Fire and Casualty Company a/k/a State Farm VP Management Corp., is an insurance company authorized to do business in the State of Tennessee and whose principal office is located at 3 State Farm Plaza, N-2, Bloomington, IL 61710. The Defendant can be served by their Registered Agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

     3.     The actions alleged in this cause occurred in Crockett County, Tennessee, and the property insured by the Defendant was located in Crockett County, Tennessee.

     4.     Jurisdiction and Venue are proper in this Court.

     5.     The Plaintiff purchased an insurance policy from the Defendant, effective from February 25, 2010, to February 25, 2011, to insure real and personal property located at 590 Poston Road, Maury City, Tennessee, 38050. (A copy of the Homeowners Policy and Declarations Page is attached hereto as Exhibit "A").

FILED
CIRCUIT COURT OF CROCKETT CO.
Date: 2-21-11
Time: _____ a.m./p.m.
Kim Kail, Circuit Court Clerk

S Phillips DC

6.    The Declarations Page and/or Homeowners Policy, Section I, Coverages & Property, set out the limits of liability for the property specifically described as follows:

| | | |
|---|---|---|
| a. | Dwelling | $114,000.00 |
| | Dwelling Extension    up to | $11,400.00 |
| b. | Personal Property | $85,500.00 |
| c. | Loss of Use | Actual Loss Sustained |

7.    The Plaintiff avers that on or about July 24, 2010, a fire occurred at the residence and destroyed the dwelling and the personal property located inside of the dwelling.

8.    The Plaintiff avers that the Crockett County Sheriff's Department determined that the cause of the fire was arson. Two (2) individuals have been charged with this crime and criminal charges are currently pending for both individuals in Crockett County, Tennessee.

9.    The Plaintiff avers that she properly filed a claim for her loss and damages with the Defendant pursuant to her Homeowners Policy. (Please refer to Exhibit "A").

10.    The Plaintiff avers that she has cooperated and provided all required information to the Defendant including, but not limited to, the Personal Property Inventory – Customer Worksheet, outlining and detailing all personal property and/or contents that were destroyed as a result of the fire. (Please refer to Exhibit "B" attached hereto).

11.    The Plaintiff avers that the fire that destroyed the dwelling and personal property occurred during the effective period of coverage of the insurance policy. (Please refer to Exhibit "A").

12.    The Plaintiff further avers that as a result of the fire described herein she suffered a loss of property that was covered by the insurance policy. (Please refer to Exhibit "A").

13.    The Plaintiff avers that as a result of the fire described herein she suffered a loss of the dwelling, more specifically, 590 Poston Road, Maury City, Tennessee, which caused damages in the approximate amount of One Hundred Fourteen Thousand and 00/100 DOLLARS ($114,000.00).

14.    The Plaintiff further avers that as a result of the fire described herein she suffered a loss of personal property in the approximate amount of Twenty Three Thousand and 00/100 DOLLARS ($23,000.00). (Please refer to Exhibit "B").

15.     The Plaintiff avers that the losses described above were properly filed as claims against her homeowner's insurance policy and were valid claims that should have been paid by the Defendant.

16.     The Plaintiff avers that the losses described herein occurred during the period of coverage as provided by the policy attached hereto as Exhibit "A" and were properly filed as claims of losses covered by the aforesaid policy.

17.     The Plaintiff avers that the Defendant has denied to voluntarily make payment for the dwelling and/or structure as provided for in Section A of the homeowner's insurance policy.

18.     The Plaintiff avers that on or about April 11, 2011, the Defendant sent a letter to the Plaintiff stating that they have conducted an investigation of the loss described herein and states that the Plaintiff has no "insurable interest" in the structure involved in the loss; therefore, the Defendant is unable to make voluntary payment for the structure under Coverage A of the policy. (Please refer to letter dated April 11, 2011 attached hereto as Exhibit "C" and Exhibit "A" previously attached).

19.     The Plaintiff avers that she in fact does have a legal interest in the dwelling and/or structure as provided for and insured by the Defendant as outlined in the homeowner's insurance and that the Defendant has taken Plaintiff's monthly insurance premium payments for the coverage of the aforesaid property. (Please refer to Exhibit "D" attached hereto).

20.     The Plaintiff avers that the Defendant, its agents and/or assigns, have violated the terms of the policy and intentionally deceived the Plaintiff about the coverage provided in the policy by accepting monthly premium payments made by the Plaintiff and by issuing the homeowner's insurance policy for the aforesaid property; therefore, the Defendant is in violation of the Tennessee Consumer Protection Act (TCPA) T.C.A. §47-18-101, et al.

21.     The Plaintiff avers that the Defendant, its agents and /or assigns, acted unfairly and deceptively by issuing Plaintiff a homeowner's insurance policy and voluntarily denying to provide the Plaintiff coverage for the aforesaid described property, more specifically, by stating the at the Plaintiff did not have a "financial" or "insurable interest" in the aforesaid property; therefore, the Defendant is in violation of the Tennessee Consumer Protection Act (TCPA) T.C.A. §47-18-101, et al.

22.     The Plaintiff avers that the Defendants, its agents and /or assigns', intentional refusal to pay the aforesaid claims was a willful breach of contract and that the Defendant intentionally and negligently misrepresented themselves and the coverage the Plaintiff was obtaining; therefore, the Defendant is in violation of the Tennessee Consumer Protection Act (TCPA) T.C.A. §47-18-101, et al.

23.     The Plaintiff further avers that the Defendant acted in bad faith by denying the Plaintiff's claim and that the Defendant's failure to pay the aforesaid claims resulted in additional expenses, loss or injury including, but not limited to, attorney's fees.

24.     The Plaintiff further avers that the Defendant is liable, pursuant to T.C.A. §56-7-105, for additional damages as provided therein not to exceed Twenty Five Percent (25 %) of the liability in accordance with the homeowner's insurance policy (Please refer to Exhibit "A").

**WHEREFORE, THE PLAINTIFF PRAYS AS FOLLOWS:**

1. That the Defendant be served with a copy of this Complaint by and through their Registered Agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203, as provided by law and be required to answer the same.

2. That the Plaintiff be awarded actual damages in the amount of the limits of liability provided for in the homeowner's insurance policy, "Coverages and Property", for the dwelling and personal property.

3. That the Plaintiff be awarded actual damages for the dwelling in the amount of One Hundred Fourteen Thousand and 00/100 DOLLARS ($114,000.00) and/or the actual replacement cost for the dwelling.

4. That the Plaintiff be awarded actual damages in the amount of Twenty Three Thousand and 00/100 DOLLARS ($23,000.00) for the loss of the personal property set out and described herein.

5. That the Plaintiff be awarded treble damages against the Defendant for losses and damages sustained as set out and described herein, pursuant to the Tennessee Consumer Protection Act (TCPA), T.C.A. §47-18-101, et al.

6. That the Plaintiff be awarded additional damages, in accordance with T.C.A. §56-7-105, in an amount not to exceed Twenty Five Percent (25 %) of the actual damages awarded for additional expense, loss or injury including, but not limited to, attorney's fees and costs, including discretionary costs of this cause.

7. That the Court award the Plaintiff any other further and other relief, both general and specific, as this Court deems just and necessary.

Plaintiff demands a jury of twelve (12) to hear all issues when joined.

Respectfully submitted this ___21st___ day of ___July___, 2011:

_Harold E. Dorsey_
Harold E. Dorsey Attorney for Plaintiff
10 S. Johnson Street, Alamo, TN 38001
(731) 696-5115, BPR #019361

_Harold E. Dorsey_
I am surety for cost in this cause

## OATH

STATE OF TENNESSEE
COUNTY OF CROCKETT

I, MOZELLA SMITH,   after first being duly sworn according to law, makes oath that the statements contained in the foregoing complaint are true to the best of my knowledge, information, and belief.

_MOZELLA SMITH_

Sworn to and subscribed before me, this ____9th____ day of ____June____, 2011.

_____
NOTARY PUBLIC
My Commission Expires: 09/25/2013

FP-7955 KT
(4/97)









FP-7955 KT
(4/97)

PRINTED
IN
U.S.A.

This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# COVER SHEET

This cover sheet provides a convenient summary of the policy provisions.

Your policy, including the endorsements and the attached papers, if any, constitutes a legal contract of insurance between you and us.

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

## INDEX OF MAJOR PROVISIONS

**Begins on Page**

**DECLARATIONS**
  Your Name      Policy Period      Limits of Liability      Declarations Page
  Location of Your Residence    Coverages      Deductibles

**DECLARATIONS CONTINUED** . . . . . . . . . . . . . . . . . . . . . . . . 1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**SECTION I - YOUR PROPERTY**
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . 3
    Coverage B - Personal Property . . . . . . . . . . . . . . . 3
    Coverage C - Loss of Use . . . . . . . . . . . . . . . . . 4
    Additional Coverages . . . . . . . . . . . . . . . . . . . 5
    Inflation Coverage . . . . . . . . . . . . . . . . . . . . 7
  LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . 7
  LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . . 9
  LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . 11
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . 13

**SECTION II - YOUR LIABILITY**
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Coverage L - Personal Liability . . . . . . . . . . . . . . 15
    Coverage M - Medical Payments to Others . . . . . . . . . . 15
    Additional Coverages . . . . . . . . . . . . . . . . . . . 15
  EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . 16
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . 18

**SECTION I AND SECTION II - CONDITIONS** . . . . . . . . . . . . . . 19

**OPTIONAL POLICY PROVISIONS** . . . . . . . . . . . . . . . . . . . 20

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.

FP-7955 KT
(4/97)

Printed in U.S.A.

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

FP-7955 KT

1

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. **"insured location"** means:

a. the **residence premises**;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f. individual or family cemetery plots or burial vaults owned by an **insured**;

g. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

h. vacant land owned by or rented to an **insured**. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. **"motor vehicle"**, when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7. **"occurrence"**, when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9. **"residence employee"** means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. **"residence premises"** means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the **Declarations**.

2

FP-7955 KT

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.**

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises,** separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

## COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or

otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured.** At your request, we will also cover personal property owned by a guest or a **residence employee,** while the property is in any other residence occupied by an **insured.**

We cover personal property usually situated at an **insured's** residence, other than the **residence premises,** for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,000 on property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises.** This coverage is limited to $250 on such property away from the **residence premises.**

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

3

FP-7955 KT

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to

property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental

4

FP-7955 KT

Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

5

FP-7955 KT

the amount we pay for the loss equals our limit of liability.

(2). If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines of the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products**. Coverage **B** is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to **you**, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse**. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

6

FP-7955 KT

loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

### COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

   (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

   (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

7

FP-7955 K

(3) from the part of a **residence premises** rented to others:

  (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

  (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

  (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

  (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

  (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

  (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

  (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

8.

FP-7955 KT

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

# SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

      which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

9

n.   pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.   **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b.   **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c.   **Water Damage**, meaning:

(1)  flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2)  water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3)  water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d.   **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e.   **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f.   **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3.  We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a.   conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

FP-7955 KT

b. defect, weakness, inadequacy, fault or unsoundness in:

(1). planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following:

## COVERAGE A - DWELLING

1. **A1 - Replacement Cost Loss Settlement - Similar Construction**.

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for **COVERAGE A - DWELLING EXTENSION**.

2. **A2 - Replacement Cost Loss Settlement - Common Construction**.

a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or

FP-7955 KT

replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

b.  Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

### 1. B1 - Limited Replacement Cost Loss Settlement.

a.  We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have

actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b.  We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

### 2. B2 - Depreciated Loss Settlement.

a.  We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

b.  We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

12

FP-7955 KT

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a. to the **insured** for an amount greater than the **insured's** interest; or

b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies;

(3) submit to and subscribe, while not in the presence of any other **insured**:

(a) statements; and

(b) examinations under oath; and

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

(4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between the depreciated value of the property before and after the loss.

13

FP-7955 KT

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a.   reach agreement with you;

   b.   there is an entry of a final judgment; or

   c.   there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

   a.   If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

   b.   If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

      (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

      (2) pays on demand any premium due under this policy, if you have not paid the premium; and

      (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   c.   If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

   d.   If we pay the mortgagee for any loss and deny payment to you:

      (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

      (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   e.   Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for

14

FP-7955 KT

a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises

out of or in the course of the **residence employee's** employment by an **insured**.

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

15

FP-7955 KT

(3) $500 in any one **occurrence**.

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

(a) **business pursuits**;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a motor **vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

# SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury or property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury or property damage** arising out of **business pursuits** of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business pursuits**;

(2) with respect to Coverage L to the occasional or part-time **business pursuits** of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others; but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury or property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury or property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury or property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

16

FP-7955 KT

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **Insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion

FP-7955 KT

does not apply to **property damage** caused by fire, smoke or explosion;

**d.** **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

**e.** **bodily injury** or **property damage** for which an **insured** under this policy is also an **insured** under a nuclear energy liability policy or would be an **insured** but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

**3.** Coverage M does not apply to **bodily injury**:

**a.** to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

**b.** to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

**c.** from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

**d.** to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

# SECTION II - CONDITIONS

**1.** **Limit of Liability.** The Coverage L limit is shown in the **Declarations.** This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

The Coverage M limit is shown in the **Declarations.** This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

**2.** **Severability of Insurance.** This insurance applies separately to each **insured.** This condition shall not increase our limit of liability for any one **occurrence.**

**3.** **Duties After Loss.** In case of an accident or **occurrence,** the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

**a.** give written notice to us or our agent as soon as practicable, which sets forth:

(1) the identity of this policy and **insured**;

(2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and available witnesses;

**b.** immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

**c.** at our request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

**d.** under the coverage - **Damage to Property of Others,** exhibit the damaged property if within the **insured's** control; and

**e.** the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury.**

18

FP-7955 KT

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice.

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

19                                          FP-7955 KT

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not

waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a **business**,

20

FP-7955 KT

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits. SECTION II - EXCLUSIONS,** item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

      (2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations.** The first amount is the limit for any one article; the second amount is the aggregate limit for each loss:

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling or explosion of firearms;

   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

21

FP-7955 KT

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension**.

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension**, item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and

incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS**, item 1.b. of Coverage L and Coverage M, is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

     (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

     (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

     (3) to the rental or holding for rental of a residence of yours:

       (a) on an occasional basis for exclusive use as a residence;

       (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

       (c) in part, as an incidental **business** or private garage;

     (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy

one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum, are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. inherent vice; or

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

FP-7955 KT

**Option OL - Building Ordinance or Law.**

**1. Coverage Provided.**

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

**2. Damaged Portions of Dwelling.**

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

**3. Undamaged Portions of Damaged Dwelling.**

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

   (1) the enforcement is directly caused by the same Loss Insured;

   (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

   (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or

land use requirements at the described premises; and

   (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

**4. Building Ordinance or Law Coverage Limitations.**

a. We will not pay for any increased cost of construction under this coverage:

   (1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

   (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

   (1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

   (2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

   (1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

   (2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

FP-7955 KT

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft:** The **COVERAGE B - PERSONAL PROPERTY**, Special Limits of Liability, item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Kim M. Brunner*    Secretary

*Edward B Rust Jr*    President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FP-7955 KT



**State Farm®**

# Personal Property Inventory - Customer Worksheet
### See instructions and example provided.

Claim Number: **42-B268-325**          Insured's Name: **Smith, Mozella**          Date of Loss: **07/24/2010**

Room: _____   Phone Number: ☐ (H) 731- 928 5449 (W) _____   ☐ (C) _____
(Please indicate the best contact number)

| Item No. | 1. Qty. | 2. Detailed Description of Item | 3. Brand Name/Model Number and/or Specifications | 4. Where Purchased or Obtained | 5. Age of Item | 6. Today's Repair Cost/Replacement Cost/Amount of Loss (without tax*) | 7. Documentation Attached (X) |
|---|---|---|---|---|---|---|---|
| | 2 | Couch: Love Seat | | Furntiur World | 3,4 | $ 2284 | |
| | 2 | Couch: Reclinder | | 2-Hand | 3 mon | $ 2340 | |
| | 5 | Bed: dresser Tu stand night stand chest | Bassett | Newbern | 3 mon | $ 2299 | |
| | 5 | Bed dresser chest | Bassett | Tuck | 3 mon | $ 1760 | |
| | 5 | Bed dresser chest | | Coffman | 3 mon | $ 1908 | |
| | 3 | Mattress: Box Spring | | | 3 mon | $ 1799 | |
| | 7 | Table: Six Chairs | Broy Hill | Big Lots | 4 mon | $ 1400 | |
| | 1 | T.V. 42 | Phi | Highland | | $ 1800 | |
| | 2 | Pot: Pan Sets | | Macy's | 4 mon | $ 575 | |
| | | Curtains | Chris Madden | JC Pennys | 3 mon | $ 2000 | |
| | 2 | Air Conditing | | | | $ 700 | |
| | | Towels | | JC Pennies | | $ 800 | |
| | | Pictures | | Kir Land | | $ 2500 | |

Item No. = Item Number   Qty. = Quantity   *Sales tax will be added by your claim representative if applicable.

The above information is true to the best of my knowledge.

EXHIBIT
B
tabbies®

Insured's Signature: Moz ella Smith          Date: 8/10/2010

*State Farm®* insurance policies, applications, forms and required notices are written in English. This document has been translated for your convenience. In the event of any difference in interpretation, the English language version controls.

1001186          Tennessee

134423.6  03-12-2010



State Farm®

# Personal Property Inventory - Customer Worksheet
## See instructions and example provided.

Claim Number: **42-B268-325**      Insured's Name: **Smith, Mozella**      Date of Loss: **07/24/2010**

Room: _____   Phone Number: ☐ (H) _731-928-SKIM_ ☐ (W) _____ ☐ (C) _____
(Please indicate the best contact number)

| Item No. | 1. Qty. | 2. Detailed Description of Item | 3. Brand Name/Model Number and/or Specifications | 4. Where Purchased or Obtained | 5. Age of Item | 6. Today's Repair Cost/Replacement Cost/Amount of Loss (without tax*) | 7. Documentation Attached (X) |
|---|---|---|---|---|---|---|---|
| | 2 | Chair Cushion | | WAL'MART | 3mons | $ 96.00 | |
| | 4 | Border | | WAL'MART | 3mon | $ 32.00 | |
| | 1 | Bath Room STAND | | Home Depot | 4mons | $ 150 | |
| | | | | | | $ | |
| | | | | | | $ | |
| | | | | | | $ | |
| | | | | | | $ | |
| | | | | | | $ | |
| | | | | | | $ | |
| | | | | | | $ | |
| | | | | | | $ | |
| | | | | | | $ | |
| | | | | | | $ | |

Item No. = Item Number   Qty. = Quantity   *Sales tax will be added by your claim representative if applicable.

The above information is true to the best of my knowledge.

Insured's Signature: _Mozella Smith_      Date: _8/10/2010_

*State Farm® insurance policies, applications, forms and required notices are written in English. This document has been translated for your convenience.  In the event of any difference in interpretation, the English language version controls.*



**State Farm®**
Providing Insurance and Financial Services
Home Office, Bloomington, Illinois 61710

April 11, 2011

MOZELLA SMITH
33 CARVER AVE APT 8A
JACKIE TN 38301-3753

Murfreesboro Operations Center
PO Box 20707
Murfreesboro, TN 37129-9875

**SENT CERTIFIED MAIL, RETURN RECEIPT
REQUESTED, AND VIA U.S. POSTAL SERVICE**

RE:     Claim Number:        42-B268-325
        Policy Number:       42-BM-G254-4
        Date of Loss:        July 24, 2010

Dear Ms. Smith:

We are writing in reference to State Farm Fire and Casualty's coverage decision regarding the above-captioned loss, which you reported to have occurred on or about July 24, 2010.

Per previous correspondence and conversations, State Farm Fire and Casualty Company has conducted an investigation of this loss. As evidence indicates that Ms. Smith has no insurable interest in the structure involved in this loss, State Farm Fire and Casualty Company is unable to make voluntary payment for the structure under Coverage A of this policy.

Items claimed as personal property under Coverage B of the policy will be handled on merits based on documentation made available to State Farm.

At this time, we are in the process of attempting to contact Attorney Shannon Jones who has represented you in this matter to determine whether he remains involved in this claim.

You are hereby notified that any action by State Farm Fire and Casualty Company or its authorized representatives to investigate the cause of loss, determine the amount of loss or damage or adjust any claim arising out of the alleged loss shall not waive any of the terms or conditions of the policy of insurance described above nor shall such action waive any of your rights under the policy.

The company does not intend by this letter to waive any policy defense in addition to those stated above but specifically reserves its right to assert such additional policy defenses at any time

Sincerely,



EXHIBIT
C

*Claire Sercombe*

Claire Sercombe, CPCU®, CLU®
Team Manager
615 692 3166
State Farm Fire and Casualty Company

11/534/538848

cc: Shannon Jones, Atty
15 South Bells St.
Alamo, TN 38001

This Instrument prepared by
Jerome Dupree
590 Poston Rd
Alamo Tn

Maximum principal indebtedness is to be One ($1.00) Dollar Cash in hand paid, receipt of is acknowledged, and in order to secure the indebtedness hereinafter mentioned, I Mozella Smith has this day bargained for the land on Poston Rd.

BEGINNING at a stake south margin of Jole Jordan, at north of Robert Dupree, west of Jole Jordan east of Wintson Dupree, The land run 174 feet north to south with Poston Road and 174 feet east to west an Jerome Dupree's Once the land has a clear Deed of Tust. To Jerome Dupree it will be convey to Mozella Smith, for Jerome Dupree Jr. The orgianel deed of Trust, West Tennessee Mortgage Service hold

EXHIBIT

D

In WITNESS WHEREOF the
said grantor(s)
has set hand and seal this 11 day
of January 2010.

Mozella Smith

Mozella Smith


I Jerome Dupree Sr. agree
to the term of this document
with sound body and mine.

Jerome Dupree Sr



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

**CZG / ALL**
**Transmittal Number: 8965034**
**Date Processed: 07/30/2011**

**Primary Contact:**
Dan Willard
State Farm
One State Farm Plaza
Bloomington, IL 61710-0001

| | |
|---|---|
| **Entity:** | State Farm VP Management Corp.<br>Entity ID Number  1687143 |
| **Entity Served:** | State Farm and Casualty Company a/k/a State Farm VP Management Corp. |
| **Title of Action:** | Mozella Smith vs. State Farm and Casualty Company a/k/a State Farm VP Management Corp |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Crockett County Circuit Court, Tennessee |
| **Case/Reference No:** | 3247 |
| **Jurisdiction Served:** | Tennessee |
| **Date Served on CSC:** | 07/29/2011 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Harold E. Dorsey<br>731-696-5115 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com